The first case for argument this morning is 15-1808 Intermec v. Alien Technology. Mr. Jones, whenever you're ready. Good morning and thank you, Your Honors. May it please the Court. With the Court's indulgence, I'm going to address three specific issues this morning to address one error committed with respect to each set of claim rejections in the case. And I will address the first and third claim set rejections first because the error committed there is sort of interrelated. And then I'll address the second one last if that makes it to the Court's. I understand the first argument with respect to claims 1 and 7 to 15, and there seems to be agreement that the Board misstated the situation, and the question is whether we have to remand to have them clear that up. Is that a separate issue that doesn't affect claims 25, 26, 28, 29? Your Honor, it does not affect those claims. They're separate claims. I'm sorry, I didn't hear what you said. It does not affect those claims. If you're sending back one set of claims for remand, you may as well send all of them back because everybody agrees that the Board's opinion here and the Board's rationale is very unclear. I mean, even Alien says in one case . . . It's very unclear with respect to 1 and 7 to 15, but as I understand what you're saying, that's a separate issue from claims 25, 26, 27, 28 first. I'll do that. Whatever order. I just wanted to see where we were in terms of the relationship. Yes, Your Honor. Well, can you tell us with respect to the Board's misstatement why that should matter at the end of the day for us? I mean, if we look at it, if we accept the other side's arguments with respect to what the prior work teaches, why, even if we all acknowledge that there's that misstatement, why that should affect the result here? Yes, Your Honor. Because of the Lee case and the Steepen or Steppen case, I don't know which way it's pronounced, but we were not allowed the opportunity to contest and submit evidence in response to the requester's arguments that it's making now. You have to remember that this is not an inter-parties review. It's an inter-parties re-exam. But wait, are the arguments they're making here on appeal with respect to the Board? No, Your Honor. Not their arguments. Their arguments are the same, but the difference is what we're faced with is dealing with the Board's rationale and the Board's statements of fact. But didn't you already deal with that? Because the examiner had a different rationale and so did your adversary. And so didn't you already kind of know what that argument was and didn't you already have to deal with it? No, Your Honor. We only deal with the arguments from the Board at the Board level. In other words, the examiner did not have the same arguments that Alien had. But you've got to deal with Alien's arguments before the Board, so I don't understand where the deprivation comes in. Your Honor, the deprivation is on review here are the Board's findings and conclusions of law. That's what's on review here and that's the only thing that we have had the opportunity to put in evidence for and to argue against. What do you mean put in evidence for? I mean, are you talking about your ability to argue the case on appeal? No, Your Honor. I'm talking about if this case is remanded, what will happen is it will go back. I guess the question we're asking, does it need to be remanded just because the Board made a misstatement in the opinion? I mean, the prior art references are the same. We're not talking about a new rejection based on different prior art references. We're just talking about whether the Board's misstatement is harmless error or not. Well, Your Honor, it's not harmless error because we were not able, we're not able on this appeal to address things that were not found by the Board on that appeal and you're making an argument with respect to why there should be no invalidated determination on these claims and I think you already make the argument, but even if you didn't, of course you would have to make the argument. The other side is here arguing that irrespective of that statement by the Board, they should have, they were relying on the reality of the record as ya-da-da. You obviously have an opportunity and you took, as I recall, you took advantage of the opportunity to argue otherwise. It's an alternative ground for affirmance or whatever. I don't see what opportunity you should have had that you don't have on the appeal. Your Honor, you're right. We did argue that in our briefs. We did argue against alien's arguments as well as against the Board's rationale. Sure. We took advantage of both. As you should and as you rightfully did. So where have you not had the ability to respond if in light of, as Judge Dyke said, the hypothetical that we were to say we can affirm because notwithstanding the Board's misstatement, when you look at the prior argument, when you look at the arguments made by your friends, there's enough to support the result. Yes, Your Honor. We certainly responded to those and that's the issue that I'd like to address. Even when you combine, let's take the first set of claims, the first rejection, claim, independent claims one and nine and their defendant claims. Little Child plus Fink and Zeller. Well, what you have there is you have a temporary memory in Little Child, a volatile memory that's admitted by alienists and admitted by the Board, said by the Board as well. And then you have Fink and Zeller, which is a non-volatile, readable, writable memory. And you have those separately in two different pieces of prior art. And so if you combine them, Your Honors, you're doing exactly what the prior art did and exactly what we distinguished over the prior art in the patent application. In other words, you've got your data information in Little Child. It's being put onto a single chip, onto the single electronic circuit of Fink and Zeller. And so you actually are reinventing, if you will, with that combination, the prior art. I'm not understanding what you're saying. Do you agree that the invention here combines two things that were present in the prior art in Little Field and Fink and Zeller? No, Your Honor. That's not what the invention. No. In fact, it's exactly. Okay. In what respect is it not the invention? It's exactly the opposite, Your Honor. The invention here is not combining things in the prior art. It's taking things apart. The state information stored on that particular chip, on that particular electronic circuit. And so what this invention is, is taking the state holding cell information apart from the non-volatile readable, writable memory. And that's what makes this invention tick. It allows for speed. It allows for. So everything was in the prior art, what you're saying, but what the invention is, is separating it out in a different manner? Well, that's part of the invention, Your Honor. Is it your position that in the prior art, it's a single memory, whereas in your invention, you've got one non-volatile memory for the state holding cell, but I bet that reversed. Volatile memory for the state holding cell and non-volatile memory for the other. Yes, Your Honor. That's exactly right. In the prior art, it was combined. In other words, you had state information, you had non-volatile readable, writable memory, and they were combined onto one. And now what's happened is the definition of a state holding cell is an electronic circuit for holding state information. And the claims are clear that that state holding cell has to be separate from and distinct. I'm sorry, I'm really confused. That it adds the non-volatile memory of Finkenzeller to the tag in the other, Little Child, right? Is that not the invention? Is that not the combination that results in the invention? No, Your Honor, because that combination of Little Child and Finkenzeller results in state information residing on the non-volatile memory circuit. Well, why is that true? If I understand correctly, Little Child has a temporary memory to store state information, right? Yes, Your Honor. Okay, and then Finkenzeller has the traditional non-volatile memory, right? That's correct. So why isn't combining them give you the invention? Because if you combine them, then you have the temporary memory for the state holding cell and the traditional non-volatile memory along with it. Well, first of all, Your Honor, you have to have a reason to combine them. Well, no, that's a different question, but I just started out asking you whether combining them gave you the invention, and I'm not understanding why it doesn't. No, Your Honor, not combining them the way that the Board combined them. No, no, I understand. The Board articulated it wrong. Everybody seems to agree with that. The question is whether, if you combine them, you get the invention. You do, don't you? You do not get the invention, Your Honor, because when you put those, there's no teaching to put those together. That's a different question. Save that for a minute, okay? I'm just saying if you do combine them, you get the invention. If the combination results in a non-volatile, readable, writable memory that is separate and apart from a state holding cell. So combining them would do that, right? It would structurally put them together, yes, Your Honor. Okay, so let's turn to the motivation to combine. What's the problem there? There's no motivation to combine. Everything's hindsight, Your Honor. There's no reason, there's no reason to put these two things together. There's no reason cited by, what the Board says, I think, is it would be an acceptable, let's see, what the Board said, it would be, let's Your Honor, that's not enough to combine references. I mean, just because you can put, just because I can physically put two things together doesn't mean that they should be put together. I mean, there has to be some motivation, there has to be some reason, there has to be, I mean, the Board's right. Is it routine to take physically a state holding cell circuit and a non-volatile, readable, writable memory together and put them together on the same tag? Well, of course. It's easy to do. But the question is, why would you do it? Well, I guess the theory is that there's some advantages to having a temporary memory in the state holding cell. You're right, Your Honor, to having it separate. And you're right, Your Honor, and those were the advantages recognized by our patentees, by our inventors. Before our inventors came along and invented this, nobody had done this, nobody had thought that there was an advantage, nobody realized that the advantage could be created. So there's just no evidence of the motivation. But these tag systems all had these non-volatile memories, right? That was sort of standard. Yes, Your Honor. But during a power loss, what would happen is, they would lose. No, we understand that. You're not making an argument that there were unexpected results when you combined these two, right? And yielded predictable results. No, Your Honor, we're not, we're, I mean. Because KSR teaches us clearly, it states, if you're combining familiar elements according to known methods, it is likely obvious when it does no more than yield predictable results. How is that not a description of this case? Because KSR also says that just because the elements exist independently in the prior art does not make it obvious. There has to be some rationale, there has to be some. Well, the rationale is because they're seeking to solve the problem that you recognize, the problem that was recognized in the industry. But Your Honor, we solved it. And if it had been so obvious, if the solution to the problem had been so obvious, then somebody long ago would have come up with this before we did. I mean, there's just no rationale for combining them together. Earlier, you said that there was a misstatement in the Board's decision with respect to its switching of the volatile and non-volatile memories. So I have, I just want to make sure I have that correctly. You think that's just a mistake on their part, that they meant to say something different? No, I think they intended what they meant. I think they just got it wrong. It's not that, that, what they did is they took the state information out of Little Child, put it into Think & Zeller, and basically made the prior art. So then you have Little Child over here without any purpose, without any memory, without any data, without anything that it's doing. I think they intentionally did it. I don't think they made a mistake. I think they thought that that was the invention. But then that's not the invention because then there's no separate non-volatile, readable, writable memory from the state holding cell because it's all on the same device. It's all on the same tag. In other words, it's all on Think & Zeller. I don't think it was a mistake in words. I think it was just a mistake and a bind. Okay, thank you. We'll restore two minutes for rebuttal. Let's hear from the other side. Good morning, Your Honors. May it please the Court. I'd like to first address one of the statements that was made by opposing counsel regarding the rejection as to claims 25, 26, 28, 29. We believe that that rejection is entirely supported by substantial evidence and that vacating remand would be appropriate under no circumstances. We believe that the record fully supports that and that this Court may affirm as to that rejection. For some of the reasons that the Court already just stated, we also believe that affirmance may be appropriate for both the first and the third rejections as well. But we understand that if the Court disagrees with that, we believe that vacate and remand to the Board in order to permit it to correct its decision would be the appropriate course of action. Do you agree? Is it your view that that was just an inadvertent error or that the Board just kind of misunderstood what was going on? Well, it's a little difficult to understand because we have essentially a history of somewhat conflicting statements throughout the Board decisions and also in the examiner decisions. So, for example, if we look at the first Board decision where they actually articulate our argument, which is, this is at A46, if the Court would like to refer to that. They say, combining conventional non-volatile memory with a separate state holding cell, as in the 841 patent, is a predictable variation that is obvious under KSR. So that's a statement of what we're saying here. You put together the non-volatile memory, which Intermec's own patent admits is a common feature of RFID tags. But they do say something different on 844, right? There they express it the other way. That is correct, Your Honor. There are then statements where it is expressed the other way. So then turning to the Board decision that is now on review, we again have the combination of statements that are stating it the correct way and then also a statement, which we've all talked about here, where the Board transposed it. So, for example, in the Board decision that is on review, we have, this is at A6, the Board is articulating its understanding of Alien's argument being requester here. And everybody here agrees that below Alien argued that it would be obvious to use a state holding cell as disclosed in Little Child in a conventional RFID tag that would have conventional non-volatile memory. Does the Board say that it agrees with your argument? So that then comes to the second statement. So there on A6, there is the correct statement of our argument. And then on A9, which Your Honor points out, the Board then agrees with our argument. We agree with requester. But then they also say further down, we agree with requester that the use of such a separate non-volatile memory distorts state information. So when they're saying they agree with you, they're saying a different view of the case. Exactly. But they can't agree with us that that's the view of the case because we've never said that. And we never argued that. We always consistently argued that there would be the state holding cell and then the non-volatile memory. And that a state holding cell, as taught in Little Child, which Intermec admits discloses a state holding cell, would simply be used in a conventional RFID tag, which has non-volatile rewrite memory, which Intermec's own patent admits. So I would also like to turn to the question of whether they had the opportunity to respond to this argument at various points during the reexamination. And they did, in fact, have that opportunity. And I would just like to point out a couple places in the record where they did actually address Alien's argument. And so one of those, these are cited in our brief in a footnote. But just for the court's review, one of those is at A5466 and 6-7. They are addressing the combination that is articulated by Alien, which is the separate state holding cell and the separate non-volatile memory. And again, at A5750, they have addressed that argument. So Intermec was clearly on notice that this argument was being presented. And it did have the opportunity to respond and submit evidence directed to this argument. Also, there was one statement that was made earlier regarding the teachings of Littlechild that I may have heard it incorrectly, but I just want to make sure that the record is clear on this. Littlechild actually discloses a state holding cell in volatile memory. So I believe that counsel may have made a statement, and I'm sorry if I'm wrong, but I believe there was maybe a statement that in the prior art, the state holding cell was actually in volatile memory. They just separated it out and put it in volatile memory. And that's actually incorrect. Littlechild discloses a state holding cell that is, in fact, in volatile memory.  So Littlechild is at, begins at A157 at the appendix. And if you look at column 10 on A174, Littlechild teaches, so here Littlechild is talking about the loss of information and the undesirability of the losing that information. And it says at starting at column 39, a random access memory RAM. I mean line 39, column 10. I'm sorry, at 39, column 39? I'm sorry, line 39, I apologize. Column 10. Column 10, line 39. A random access memory RAM or a dynamic random access memory DRAM like memory does not suffer from slow write times, consumes little power. It will be appreciated that RAM will hold its data provided the supply voltage is maintained, and DRAM will hold its data for a short time after the supply voltages have been removed. Then turning to the column 11, at 39, I'm sorry, at 38 again, there is a discussion of that preferred state holding cell. And then also at column 12, line 66, there is a reference to the muting information, which is the mute chip bit of Littlechild being stored in temporary memory. So Littlechild absolutely discloses that the mute chip bit, the state information, is stored in volatile memory. It should be the temporary memory. I think they've pretty much conceded in the latter parts of the argument that the combination of Littlechild and Finken-Zeller gives you the invention. They're arguing that there's a lack of motivation to combine. And what's the motivation? Is it the same motivation specified in Littlechild? Well, Littlechild in fact actually suggests the presence of a separate non-volatile memory, and this is something that the board recognized, and in particular in the board's decision on rehearing, it specifically said this at A17, that Littlechild discloses both volatile and then the transponder's memory. And so Littlechild itself is actually suggesting that one might want to have a non-volatile memory. And further, Intermec has actually admitted, and we cited this in our briefing, that one of ordinary skill in the art would be motivated to add a ROM to Littlechild. So they have non-volatile memory to Littlechild already. So that really narrows the inquiry to really just whether or not that non-volatile memory would be read-write. And as Finken-Zeller teaches, when one wants to be able to read data from a tag and also write data to the tag, one would simply use EEPROM as an ordinary choice, as a predictable variation. And again, Intermec's own patent is exactly in line with this. It also teaches that EEPROM is a standard component of these RFID tags. So unless the Court has any further questions regarding Claims 1 and 7-15, I would like to, if I can, turn to Claims 25-26 and 28-29. So for these claims, the Board found these claims obvious over a combination of two references, Littlechild and Stewart. And the only question here is whether Stewart discloses a state holding cell. And we believe that the Board's and Stewart's disclosures make this very clear. So Stewart teaches that tags will face interruptions in power. It then states that one of ordinary skill in the art will recognize that any device that might suffer from the loss of power will benefit from a tenacious storage state or latch. It then goes on to describe this tenacious latch, and it says that this circuitry maintains a particular state for a prolonged period of time, and that this can be used in applications such as enabling a circuit to continue to function in the event of a brief loss of power. It specifically says it maintains a state. And Stewart says, again, it teaches that it's important that certain states like sleep-wake or other command states persist, even through short interruptions to the power supply. It's talking about a state persisting during an interruption of the power supply, and it teaches that the tenacious latch of Stewart can function as this sleep-wake latch. And so Stewart very clearly teaches that its tenacious latch can be used to maintain state information during an interruption in power, which is all that Claim 25 requires. And so for those reasons, Claim 25, 26, and then 28 and 29 are obvious over the combination of Littlechild and Stewart, is supported by more than substantial evidence. With my remaining time, unless the Court has any questions regarding that, I would like to turn to Claim 27. And as counsel noted with respect to Claim 27, we do have a potential lack of clarity here, but again, it is Alien's position that the Board's rejection can be affirmed on the grounds that are stated in the Board's decision. So I would like to turn to the substance of what the Board said here. And so for Claim 27, we have two different references at issue. We have this Iglese reference, and then we have, again, the Finkenzeller reference from before, which is the RFID handbook. And so the Board found Claim 27 obvious over a combination of Iglese and Finkenzeller. And so there's no dispute, and the parties agree, that Iglese teaches a read-write nonvolatile memory, which is the EAROM, in which it stores state information, and then it also does other things. So you can read and write data from it. And Intermec agrees with this. So essentially, in Iglese, you have one circuit element essentially performing both of these functions. Iglese adds the clock. Iglese does add the clock, and they have not contested the examiner's finding that Iglese discloses that clock. And so what Iglese does is that it teaches the EAROM functioning as a state-holding cell and also performing other functions, functioning as a read-write nonvolatile memory. And it's also undisputed here that Finkenzeller teaches multiple memories on separate circuit elements. In fact, Iglese teaches that as well. If you look at the diagrams of Iglese, which we've cited, and also Iglese's description, there's also RAM and ROM and other types of memory in there. So really what the board is saying is that it is obvious when you have one EAROM doing two things to split that into two elements, each doing a separate thing. So the extra EAROM would not be redundant. It's performing the function of serving as the nonvolatile memory and reading and writing other data, whereas the other EAROM is functioning as a state-holding cell. And that's okay here, because there is no requirement that the state-holding cell be, while it certainly can be implemented in volatile memory, there is no requirement that it be in volatile memory. And so we believe that that determination is fully supported by substantial evidence, both by the teachings of Iglese and by the use of prior art elements according to their established functions. And that is the epitome of obviousness. Time's up. Thank you. Thank you, Your Honors. Thank you, Your Honors. Four very quick points. In answer to Judge Stoll's question about was it a mistake, if it was a mistake, the board did it three times. And they committed the same mistake three different times. With respect to the remand, Your Honors, here's the case that I think is on all fours with this. It's the Rambis v. Rhea case from the Federal Circuit 2013. It's cited at page 25 of our brief, in a footnote number three. It explains that even a new theory of supporting a combination of references constitutes a new ground of rejection, and that the APA requires affording us, the patent owner, an opportunity to respond. And the reason for that is because this is an inter-parties re-exam. It's not an inter-parties review. Third, Your Honors, I heard from Aliens Counsel the use of the term predictable use. Well, that's the question. It really is the question on motivation. How is it predictable that you can put these two memories together? How is it predictable? I mean, sure, you can put them together, and it would be easy physically to put them together, but where's the prediction to put them together? Where's the predictable use come from? And that's what's missing here, Your Honors, is in fact the prediction, the predictable use of these, of Fink and Zeller and Littlechild together. And then finally, Your Honor, with regard to Stewart and the Tenacious Latch, Stewart's not a state holding cell. The Tenacious Latch is not a state holding cell, and it's not a state holding cell primarily for two reasons. Number one, in Stewart, every five seconds it has to be reset. There has to be a new signal sent, a new signal received, and that's the whole purpose of the 841 invention is so that you don't have to send and receive resetting signals. And that happens in Stewart whether power is owned or whether power is lost. The other issue is the present state issue, and that's discussed in our reply brief at pages 19 through 20, I think, and I'll just leave that for the court's reading. Thank you, Your Honors. Thank you. We thank both parties and the cases submitted.